UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LUIS ALBERTO OCAMPO and CARLOS
JIMINEZ, on behalf of themselves, individually,
and on behalf of all others similarly-situated,

                      Plaintiffs,

             -against-

GUARANTEED HOME IMPROVEMENT LLC,
and JUSTIN ROMANO, individually, and
ABRAHAM FINKLER, individually, and
RICARDO MARTINEZ, individually,

                     Defendants.
-------------------------------------------------------------X

**MEMORANDUM
AND OPINION**
CV 24-6980 (SJB) (AYS)

**SHIELDS, Magistrate Judge:**

Plaintiffs, Luis Alberto Ocampo ("Ocampo") and Carlos Jiminez ("Jiminez") (collectively, "Plaintiffs"), commenced this action, on behalf of themselves and others similarly situated, pursuant to the Fair Labor Standards Act of 1938, 29 USC §§ 201, et seq. ("FLSA"), New York Labor Law Article 6 §§ 190 et seq., and Article 19 §§ 650 et seq. ("NYLL"), and Title 12 of the New York Codes Rules and Regulations ("NYCRR"). Plaintiffs seek unpaid wages, overtime compensation and other damages. Named as defendants are Guaranteed Home Improvement LLC ("GHI"), Justin Romano ("Romano"), Abraham Finkler ("Finkler"), and Ricardo Martinez ("Martinez") (collectively, "Defendants").

Presently before the Court is Plaintiffs' motion to have this matter proceed conditionally as a collective action, pursuant to 29 U.S.C. § 216(b). In the event that this Court grants Plaintiffs' motion for conditional certification, Plaintiffs seek approval of a form of notice advising members of the collective of their right to opt-in to this action and authorizing the sending of notice of the collective action. Defendants oppose the motion in its entirety.

1

For the reasons set forth below, Plaintiffs' motion to proceed as a conditional collective action is granted. The collective action shall consist of all current and former non-managerial employees of Defendants, who at any time between October 2, 2021 and the present, performed any work for Defendants as chimney technicians, helpers, or in a similar role. Notice shall be provided in English, Spanish and any other identified primary language of potential class members and shall consist of mailing and text-message, with reminder notices sent thirty days after sending the initial notice. The opt-in period for potential plaintiffs shall be sixty days. As such, Defendants are directed to provide Plaintiffs with, to the extent known, the names, mailing addresses, home and mobile telephone numbers, primary languages spoken, and dates of employment of all employees who may be potential plaintiffs herein within fourteen (14) days of the date of this Order. Finally, Defendants are directed to post the Court-approved notice on the door to the office at GHI's warehouse located at 500 Old Bethpage Road in Plainview, New York in a location that is visible to all of the potential collective action members. Such notice shall remain posted during the entire opt-in period.

BACKGROUND

I.      Facts Considered in the Context of this Motion

The facts summarized below are drawn from the submissions of the parties as described below. Plaintiffs rely on the allegations set forth in the Amended Complaint, (Docket Entry ("DE") [38]), as well as documents and declarations. As to factual declarations, Plaintiffs submit their own declarations, as well as the declarations of opt-in Plaintiffs Alexis Javier Munoz Rivero and Eduardo Vizcaino Perez (DE [49-7]-[49-10]). In response, Defendants merely submit a letter brief from their counsel opposing Plaintiffs' motion. (DE [51].) The Court notes that Defendants' filing is in direct contravention of this Court's Order dated September 18, 2025,

2

which denied the parties' request to proceed by letter motion. The Court expressly directed the parties that any motion – and, accordingly, any opposition – "shall be made by formal motion, which shall include memoranda of law and supporting affidavits." (Order of Shields, M.J., dated Sept. 18, 2025.) While Plaintiffs adhered to this Order, Defendants did not.

II.    The Parties and the Factual Allegations of the Complaint

Defendant GHI is a New York limited liability company with its principal place of business in Plainview, New York. (Am. Compl. ¶ 11.) GHI operates a chimney service business with clients throughout the New York metropolitan area. (Id. ¶ 30.) Defendants Romano, Finkler and Martinez (the "Individual Defendants") are the co-owners of GHI, with Martinez operating as the manager. (Id. ¶ 12.) As such, the Individual Defendants together were responsible for overseeing and managing the day-to-day operations of GHI, including the hiring and firing of employees, determining employees' rates and methods of pay, as well as their works schedules, and maintaining employment records. (Id. ¶ 12.)

Plaintiff Ocampo was employed by Defendants, first as a non-managerial helper and then as chimney technician, from about June 2020 through March 12, 2024. (Id. ¶ 38; Ocampo Decl. ¶ 2.) In these roles, Ocampo was responsible for performing chimney maintenance work for GHI's clients, primarily on Long Island and throughout New York City. (Am. Compl. ¶ 38.) Throughout his employment, Ocampo was regularly required to work six days per week, Monday through Saturday, from 7:00 a.m. to at least 8:00 p.m., and sometimes later, with an uninterrupted break during any shift, for a total of at least seventy-eight hours per week. (Id. ¶ 39.) Ocampo was paid a flat weekly salary ranging from $975.00 to $1,200.00. (Id. ¶ 40; Ocamp Decl. ¶ 6.) Ocampo was also paid a non-discretionary bonus on a weekly basis, which consisted of a percentage of the fees of the projects he was assigned. Such bonuses generally ranged from

3

$300.00 to $600.00 per week, with the average bonus being approximately $500.00 per week. (Am. Compl. ¶ 41.) Ocampo was typically paid by check, with the non-discretionary bonus provided in cash. (Id. ¶ 44.)

Plaintiff Jiminez was employed by Defendants as a non-managerial helper from November 13, 2023 through February 13, 2024, primarily on Long Island and throughout New York City. (Id. ¶ 45.) In this role, Jiminez was responsible for helping chimney technicians whenever they needed assistance by standing on Defendants' clients' roofs waiting for direction, cleaning up the work site, and holding ladders for technicians while they were on the roof. (Id.) Throughout his employment, Jiminez was regularly required to work six days per week, Monday through Saturday, from 7:00 a.m. to 9:00 p.m., with an uninterrupted break during each shift, for a total of eighty-four hours per week. (Id. ¶ 46.) Jiminez was paid a flat weekly salary of $975.00, which was typically provided by check. (Id. ¶¶ 47, 51.)

Although Plaintiffs were paid on a weekly basis, on each occasion they were paid, Defendants failed to furnish Plaintiffs with a wage statement that accurately listed their actual hours worked, their overtime rates of pay and their overtime wages owed. (Id. ¶ 33.) Additionally, at their respective times of hire, Defendants failed to provide Plaintiffs with any wage notice. (Id. ¶ 34.)

III.   Claims Alleged in the Amended Complaint and the Proposed Collective

Plaintiffs' first cause of action alleges that Defendants violated the FLSA by willfully failing to pay them and putative collective members overtime for all hours worked in excess of forty hours per workweek. (Id. ¶¶ 52-58.) The second cause of action alleges a parallel unpaid overtime wage claim pursuant to the NYLL and the NYCRR. (Id. ¶¶ 59-64.) The third cause of action alleges unpaid minimum wages pursuant to the NYLL and the NYCRR. (Id. ¶¶ 65-70.)

4

The fourth cause of action alleges violations of the NYLL's and the NYCRR's spread of hours requirements. (Id. ¶¶ 71-76.) The fifth cause of action alleges failure to furnish accurate wage statements in violation of the NYLL. (Id. ¶¶ 77-81.) Finally, the sixth cause of action alleges failure to furnish accurate wage notices in violation of the NYLL. (Id. ¶¶ 82-86.)

Plaintiffs seek to pursue this matter as an FLSA collective action that includes all current and former non-managerial chimney technicians, helpers, or similar roles employed by Defendants throughout New York at any time from October 2, 2018 to the present. (Pl. Mot. for Conditional Certification and Notice, DE [49], 1.) Members of the proposed collective action are alleged to be subject to the same unlawful policy as Plaintiffs in that they all worked hours for which they were not compensated in violation of the FLSA's and the NYLL's minimum and overtime wage provisions. Defendants' conduct with respect to the improper payment of wages and failure to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiffs and putative collective members, is alleged to be willful. (Am. Compl. ¶¶ 2, 16, 18.) In furtherance of the request to proceed as a collective action, Plaintiffs request court-authorized notice be disseminated to the putative collective members to notify them of the pendency of this action, and of their rights under the FLSA. (Id., Wherefore Clause ¶ d.)

IV.     Plaintiff's Motion and Supporting Documentation

As noted, Plaintiffs seek conditional certification of this matter as an FLSA collective action, and to have notice of the pendency of this action (and the right to opt in), disseminated to all potential members of the proposed collective action. The individuals to whom notice is proposed to be sent are described as "current and former non-managerial employees of Defendants, who at any time between October 2, 2018, and the present, performed any work for Defendants as chimney technicians, helpers, or in a similar role." (Pl. Not. of Mot. 1.) Plaintiffs

5

seek a six-year time period for their collective action, since the Complaint alleges violations of both the FLSA and the NYLL. (Pl. Mem. of Law, DE [49-1], 17.) In support of their motion, Plaintiffs submit, as noted above, the declarations of the two named Plaintiffs – Ocampo and Jimenez – along with other employee declarations and documents.

Ocampo's declaration states that he was employed by Defendants as both a helper and a chimney technician from approximately June 2020 to March 12, 2024. (Ocampo Decl., DE [49-7], ¶ 2.) In his role as a helper, Ocampo's primary job responsibilities consisted of helping chimney technicians whenever they needed assistance by standing on Defendants' clients' roofs waiting for direction, cleaning up the work site, and holding the ladders for technicians while they were on the roof. (Id. ¶ 3.) When he became a chimney technician, his primary job responsibilities consisted of performing chimney repairs and maintenance work for Defendants' clients. (Id.)

Throughout his employment, Ocampo's typical schedule was 7:00 a.m. to 8:00 p.m., Monday to Saturday, with an uninterrupted break during any shift, for a total of seventy-eight hours per week. (Id. ¶ 5.) From the beginning of his employment in June 2020, when he worked as a helper, Ocampo was paid a flat weekly salary of $975.00, regardless of the number of hours worked. (Id. ¶ 6.) When he became a chimney technician in September 2022, his salary increased to a flat rate of $1,200.00 per week, accompanied by a non-discretionary weekly bonus that ranged from $300.00 to $600.00, with $500.00 being the average bonus paid per week. (Id.) The weekly bonus was based on a percentage of the fees from the projects on which Ocampo worked. (Id.)

Ocampo states in his declaration that, during his employment, he observed at least eighteen other non-managerial employees – whose names he provides – perform the same or

6

similar duties and work the same amount of hours as he did. (Id. ¶ 8.) Based on his conversations with these employees, Ocampo states that they were all compensated in the same manner as he was – with a flat weekly salary irrespective of how many hours they worked. (Id. ¶ 9.)

Plaintiff Jiminez states in his declaration that he was employed by Defendants as a helper from approximately November 13, 2023 to February 13, 2024. (Jiminez Decl., DE [49-8], ¶ 2.) In his role as a helper, Jiminez's primary job responsibilities consisted of helping chimney technicians whenever they needed assistance by standing on Defendants' clients' roofs waiting for direction, cleaning up the work site, and holding the ladders for technicians while they were on the roof. (Id. ¶ 3.)

Throughout his employment, Jiminez's typical schedule was 7:00 a.m. to 9:00 p.m., Monday to Saturday, with an uninterrupted break during any shift, for a total of eighty-four hours per week. (Id. ¶ 5.) Jiminez was paid a flat weekly salary of $975.00 throughout his employment, regardless of the number of hours worked. (Id. ¶ 6.)

Jiminez states in his declaration that, during his employment, he observed at least twenty-five other non-managerial employees – some of whose names he provides – perform the same or similar duties and work the same amount of hours as he did. (Id. ¶ 8.) Based on his conversations with these employees, Jiminez states that they were all compensated in the same manner as he was – with a flat weekly salary irrespective of how many hours they worked. (Id. ¶ 9.)

Opt-in Plaintiff Alexis Javier Munoz Rivero ("Munoz Rivero") also provided a declaration in support of Plaintiffs' motion. Munoz Rivero states in his declaration that he was employed by Defendants as a helper from approximately November 5, 2023 to January 29, 2025.

(Munoz Rivero Decl., DE [49-9], ¶ 2.) In his role as a helper, Munoz Rivero's primary job responsibilities consisted of helping chimney technicians whenever they needed assistance by standing on Defendants' clients' roofs waiting for direction, cleaning up the work site, and holding the ladders for technicians while they were on the roof. (Id. ¶ 3.)

Throughout his employment, Munoz Rivero's typical schedule was 6:00 a.m. to 9:00 p.m., Monday to Saturday, with an uninterrupted break during any shift, for a total of ninety hours per week. (Id. ¶ 5.) Munoz Rivero was paid a flat weekly salary of $975.00 throughout his employment, regardless of the number of hours worked. (Id. ¶ 6.)

Munoz Rivero states in his declaration that, during his employment, he observed at least twenty-two other non-managerial employees – whose names he provides – perform the same or similar duties and work the same amount of hours as he did. (Id. ¶ 8.) Based on his conversations with these employees, Munoz Rivero states that they were all compensated in the same manner as he was – with a flat weekly salary irrespective of how many hours they worked. (Id. ¶ 9.)

Finally, Plaintiffs provide the declaration of Opt-In Plaintiff Eduardo Vizcaino Perez ("Vizcaino Perez") in support of their motion for conditional certification. Vizcaino Perez states that he was employed by Defendants as both a helper and a chimney technician from approximately November 5, 2023 to April 3, 2025. (Vizcaino Perez Decl., DE [49-10], ¶ 2.) In his role as a helper, Vizcaino Perez's primary job responsibilities consisted of helping chimney technicians whenever they needed assistance by standing on Defendants' clients' roofs waiting for direction, cleaning up the work site, and holding the ladders for technicians while they were on the roof. (Id. ¶ 3.) When he became a chimney technician, his primary job responsibilities consisted of performing chimney repairs and maintenance work for Defendants' clients. (Id.)

8

Throughout his employment, Vizcaino Perez's typical schedule was 6:50 a.m. to 9:00 p.m., Monday to Saturday, with an uninterrupted break during any shift, for a total of eighty-five hours per week. (Id. ¶ 5.) From the beginning of his employment in November 2023, when he worked as a helper, Vizcaino Perez was paid a flat weekly salary of $975.00, regardless of the number of hours worked. (Id. ¶ 6.) When he became a chimney technician in January 2025, his salary increased to a flat rate of $1,200.00 per week, accompanied by a non-discretionary weekly bonus that ranged from $200.00 to $400.00, with $200.00 being the average bonus paid per week. (Id.) The weekly bonus was based on a percentage of the fees from the projects on which Vizcaino Perez worked. (Id.)

Vizcaino Perez states in his declaration that, during his employment, he observed at least twenty-two other non-managerial employees – whose names he provides – perform the same or similar duties and work the same amount of hours as he did. (Id. ¶ 8.) Based on his conversations with these employees, Vizcaino Perez states that they were all compensated in the same manner as he was – with a flat weekly salary irrespective of how many hours they worked. (Id. ¶ 9.)

V.      Defendant's Opposition

Defendants oppose Plaintiffs' motion on the ground that Plaintiffs have not provided sufficient evidence that they were subject to a common policy or plan that violated the law. (Def. Letter Mot. in Opp'n, DE [51].) In support of their opposition, Defendants argue first that Plaintiffs' declarations do not rise to the level of appropriate proof because they are overly broad and offer only vague generalities. (Id. at 2.) According to Defendants, the Court's inquiry at this stage is "far more substantive and fact-intensive than Plaintiffs casually suggest" and Plaintiffs have failed to provide such specific facts. (Id. at 2-3.)

Second, Defendants argue that Plaintiffs have failed to provide evidence that they were subjected to a common policy to deprive them of overtime wages. (Id. at 4.) According to Defendants, "poor recordkeeping or even blatant errors with respect to pay records resulting in unpaid wages does no alone warrant conditional class certification." (Id.)

Defendants offer nothing other than their counsel's letter brief in support of their opposition. There are no declarations from the Individual Defendants; nor have they submitted any documents to controvert Plaintiffs' position.

Having set forth the parties' positions and supporting documentation, this Court now turns to the merits of the motion.

DISCUSSION

I.      Conditional Collective Action Certification: Legal Principles

The FLSA imposes liability upon employers that violate the statute's minimum wage and overtime compensation provisions. See 29 U.S.C. §§ 206-207. Section 216(b) of that statute provides an employee with a private right of action to recover overtime compensation and/or minimum wages on behalf of himself, as well as other similarly situated employees. Such similarly situated employees may become parties to an FLSA action upon giving consent in writing to become parties, which consent is filed in the court in which the action is brought. See 29 U.S.C. § 216(b); Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 65 (E.D.N.Y. 2016).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective. See Mongiove v. Nate's Corp., No. 15-CV-1024, 2016 WL 590460, at * 1 (E.D.N.Y. Feb. 11, 2016). First, the court determines whether the proposed class members are similarly situated with respect to the alleged FLSA violations. See Myers v. Hertz, 624 F.3d 537, 554-55 (2d Cir. 2010); Wang v. Shun Lee Palace Rest., Inc., No.

17-CV-0840, 2018 WL 3155835, at *3 (S.D.N.Y. June 28, 2018); Jin v. Shanghai Original, Inc., No. 16-cv-5633, 2018 WL 1597389, at *5 (E.D.N.Y. Apr. 2, 2018); Rubery v. Buth-Na-Bodhaige, Inc., 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2007). If the court decides the similarity question in the affirmative, appropriate notice is sent and members of the collective may thereafter "opt-in" by consenting in writing to be bound by the result of the suit. See Sultonmurodov v. Mesivta of Long Beach, No. 15-CV-1654, 2015 WL 9273948, at *2 (E.D.N.Y. Dec. 17. 2015); Rubery, 569 F. Supp. 2d at 336; see also 29 U.S.C. § 216(b).

The second step, which typically occurs after the completion of discovery, requires the court to make renewed factual findings as to whether the class members are actually similarly situated. See Rosario v. Valentine Ave. Discount Store, Co., 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011); Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009). "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." Bifulco, 262 F.R.D. at 212 (quotations and citations omitted). In the event that they are not, "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." Id. (quoting Rubery, 569 F. Supp. 2d at 336); see also Jin, 2018 WL 1597389, at *5.

The instant motion concerns only the first step, i.e., whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient," Castillo v. Perfume Worldwide Inc., No. 17-2972, 2018 WL 1581975, at *3 (E.D.N.Y. Mar. 30, 2018) (quoting Bifulco, 262 F.R.D. at 212), and "plaintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.'" Myers,

624 F.3d at 555 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997));

Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013).

Importantly, the issue of "similarly situated" refers not to similarity of job duties, but to similarity in pay structure. Thus, courts in this district and elsewhere routinely reject attempts to limit certification based on alleged dissimilarity of job function. See, e.g., Ritz v. Mike Rory Corp., No. 12 CV 367, 2013 WL 1799974, at *2 (E.D.N.Y. Apr. 30, 2013) (rejecting limiting conditional class to bartenders and instead, including all tipped service workers in conditional class); Calderon v. King Umberto, Inc., 892 F. Supp. 2d 456, 464 (E.D.N.Y. 2012) (refusing to limit certification to positions held by named plaintiffs); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (rejecting as frivolous defendant's argument that certification should be limited to duck feeders); Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 391 (E.D.N.Y. 2010) (certifying employees despite varying positions and functions). Additionally, it is well-recognized that the burden at the conditional certification stage is so low that even Plaintiff's lone affidavit setting forth a common payment scheme may suffice. See Sultonmurodov, 2015 WL 9273948, at *2.

II.      The Motion for Conditional Certification is Granted

Defendants oppose the within motion on the ground that Plaintiffs' submission fails to sustain even the limited burden of proof necessary for notice of a collective action to be sent, arguing that Plaintiffs have not demonstrated a common unlawful compensation policy. The Court disagrees. Plaintiffs have set forth sufficient facts to support the modest factual showing that Defendants' non-managerial chimney technicians and helpers were all subject to common compensation and timekeeping practices, and routinely worked in excess of forty hours per week without appropriate overtime compensation, due to Defendant's common practices.

Despite Defendants' arguments to the contrary, "[t]he relevant issue here . . . is not whether Plaintiff[s] and potential opt-in plaintiffs [are] identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week." Zaniewski v. PRRC Inc., 848 F. Supp. 2d 213 (D. Conn. 2012). Plaintiff is seeking only conditional certification and thus, "a fact-intensive inquiry is inappropriate at the notice stage . . . ." Id. Defendants' opposition papers serve only to create a question of fact; they do not, as a matter of law, defeat the motion for conditional certification as "the merits of plaintiffs' claims are not at issue on a motion for conditional certification." Marin v. Apple-Metro, Inc., No. 12 CV 5274, 2014 WL 11035376, at *7 (E.D.N.Y. July 28, 2014) (quoting Laroque v. Domino's Pizza, 557 F. Supp. 2d 346, 345 (E.D.N.Y. 2008)); see also Lujan v. Cabana Mgmt., Inc., No. 10-CV-755, 2011 WL 317984, at *6 (E.D.N.Y. Feb. 1, 2011) (finding that defendants' evidentiary showing was "at a minimum, a 'contested area of fact requiring discovery, and not a basis for denying conditional certification'") (citation omitted).

Accordingly, Plaintiff's motion for conditional certification of a collective action is granted.

III.    Notice

A.    Scope of Notice

Plaintiffs seek to send notice of this lawsuit to all current and former non-managerial employees of Defendants who worked as chimney technicians, helpers, or in a similar role from October 2, 2018 to the present, representing six years preceding the filing of the Complaint herein. (Pl. Not. of Mot 1; Pl. Mem. of Law 16-17.) Plaintiffs base their request on the fact that the Complaint also contains claims under the New York Labor Law, which has a six-year statute of limitations. (Pl. Mem. of Law 17.) Defendants do not address this part of

13

Plaintiffs' motion whatsoever in their opposition. However, the Court finds a six- year notice period to be inappropriate.

The FLSA has a three-year statute of limitations for willful violations. See 29 U.S.C. § 255(a). "Sensibly, then, courts often set a notice period for three years before the filing of the complaint in a FLSA case." Zhao v. Surge Private Equity LLC, No. 22 Civ. 7314, 2023 WL 3477591, at *7 (S.D.N.Y. May 16, 2023) (citation omitted). "Some courts in the Second Circuit have permitted six-year periods in conditionally certified FLSA collective actions which also involve NYLL claims to account for the NYLL's six-year statute of limitations." Id. (internal quotation marks omitted). However, "'the growing trend in this Circuit is to use a three-year rather than a six-year notice period when the motion before the Court seeks certification under the FLSA' rather than under Rule 23 of the Federal Rules of Civil Procedure in connection with New York Labor Law claims." Beda v. Nurtury at Flandreau, Inc., No. 22-cv-4827, 2024 WL 2793734, at *6 (S.D.N.Y. May 28, 2024) (quoting Zhao, 2023 WL 3477591, at *7); see also Franze v. Bimbo Foods Bakeries Distrib., LLC, No. 17-cv-3556, 2019 WL 1417125, at *4 (S.D.N.Y. Mar. 29, 2019) (collecting cases). "This is so because courts have recognized that authorizing notice of FLSA-only claims to putative collective members who are otherwise time-barred from bringing claims may promote confusion should counsel later move for class certification of NYLL claims." Zhao, 2023 WL 3477591, at *7.

Since Plaintiffs' motion only seeks conditional certification of a collective action under the FLSA, and because there is no assurance at this time that Plaintiffs will later seek certification of a NYLL class under Rule 23, much less succeed in doing so, the Court does not find a six-year notice period to be appropriate. See Beda, 2024 WL 2793734, at *6; Zhao, 2023 WL 3477591, at *7. Instead, the Court authorizes notice to be sent to the relevant putative

14

collective members for the three years preceding the filing of the Complaint herein. Accordingly, Plaintiffs' proposed notice shall be disseminated to all current and former non-managerial employees of Defendants who at any time between October 2, 2021 and the present performed any work for Defendants as chimney technicians, helpers, or in a similar role.

> B.    Form of Notice

Plaintiffs propose disseminating notice by mail and text message, with reminder notices issuing thirty days after sending the initial notice, allowing potential plaintiffs sixty days during which to determine whether to opt in. (Pl. Mem. of Law 20-22.) Plaintiffs also request that the Court order Defendants to post the notice and consent form at their warehouse at 500 Old Bethpage Road in Plainview, New York. (Id. 23.) Finally, Plaintiffs request that Defendants be directed to produce, within fourteen days, the names, last known mailing addresses, all home and mobile telephone numbers, primary languages spoken, and dates of employment for all potential collective members. Again, Defendants fail to address this part of Plaintiffs' motion entirely.

This court agrees with Plaintiffs, and grants notice by means of mailing and text-message, as well as posting at Defendants' business location. This court also grants the Plaintiffs' request to issue reminder notices thirty days after the sending of the initial notice and further specifies a sixty-day opt-in period for potential plaintiffs. Finally, Defendants are directed to provide Plaintiffs' counsel with the names, last known mailing addresses, home and mobile telephone numbers, primary languages spoken, and dates of employment for all potential collective members within fourteen days of the date of this Order.

With respect to Plaintiff's first request – to issue notice by means of mailing, posting and text-message – the typical methods for disseminating notice to putative collective action

members are through the United States mail and by posting hard copies at Defendants' places of business. See, e.g., Trinidad, 962 F. Supp. 2d at 564; Malloy v. Richard Fleischman & Assocs., Inc., No. 09-cv-322, 2009 WL 1585979, at *4 (S.D.N.Y. June 3, 2009). However, more recent cases recognize that "[e]lectronic messaging in addition to first class mail 'reasonably further[s] the purpose of notice of a collective action under the FLSA.'" Valdez v. MichPat & Fam, LLC, No. 20-CV-2570, 2022 WL 950450, at *15 (E.D.N.Y. Mar. 30, 2022) (quoting Cabrera v. Stephens, No. 16-CV-3234, 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017); see also Millin v. Brooklyn Born Chocolate, LLC, No. 19-CV-3346, 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020) ("There is no credible reason why notice should not be provided by email or text message, especially given the broad remedial purpose of the FLSA."). "Courts also routinely approve requests to post notice on employee bulletin boards 'and in other common areas, even where potential members will also be notified by mail.'" Valdez, 2022 WL 950450, at *15 (quoting Cabrera, 2017 WL 4326511, at *8 (additional citation omitted). As such, this Court grants notice by means of the traditional mailing, as well as via text message and posting at Defendants' warehouse.

With respect to Plaintiff's second request – to issue reminder notices thirty days after the initial notice is sent – courts in this district routinely authorize such reminder notices. See Valdez, 2022 WL 950450, at *16 ("Reminder notices are appropriate '[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in[.]") (alterations in original); see also Williams v. Movage, Inc., 17 Civ. 2628, 2018 WL 1940435, at *10 (S.D.N.Y. Apr. 24, 2018) (collecting numerous cases in this Circuit where courts have consistently authorized these types of reminder notices). This Court

16

sees no reason to deviate from the common practice in this circuit of permitting plaintiffs to issue reminder notices. As such, Plaintiffs' request for reminder notices is granted.

With respect to Plaintiffs' third request – for a sixty-day opt-in period – Plaintiffs argue it is a common notice period in collective actions. (Pl. Mem. 21) (collecting cases). In light of the fact that Defendants do not oppose this request, a sixty-day opt-in period is granted. Finally, Defendants are directed to provide Plaintiffs' counsel with the names, last known mailing addresses, home and mobile telephone numbers, primary languages spoken, and dates of employment for all potential collective members within fourteen days of the date of this Order.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification as an FLSA collective action, pursuant to Section 216(b) of the FLSA, is granted. The collective action shall consist of all current and former non-managerial employees of Defendants, who at any time between October 2, 2021 and the present, performed any work for Defendants as chimney technicians, helpers, or in a similar role. Notice shall be provided in English, Spanish and any other identified primary language of potential class members and shall be disseminated via traditional mail and text-message, with reminder notices issued thirty days after the sending of the initial notice. The opt-in period for potential opt-in plaintiffs shall be sixty days. Plaintiffs' proposed Notice, filed at Exhibit B to their motion, and their proposed Reminder Notice, filed at Exhibit D to their motion, are hereby approved.

Defendants are directed to provide Plaintiffs with, to the extent known, the names, mailing addresses, home and mobile telephone numbers, primary languages spoken, and dates of employment of all employees who may be potential plaintiffs herein within fourteen (14) days of the date of this Order. Finally, Defendants are directed to post the Court-approved Notice on the

17

door to the office at Guaranteed Home Improvement's warehouse located at 500 Old Bethpage Road in Plainview, New York in a location that is visible to all of the potential collective action members. Such notice shall remain posted during the entire opt-in period.

**SO ORDERED:**

Dated:  Central Islip, New York
        April 22, 2026

                                        /s/ Anne Y. Shields
                                        Anne Y. Shields
                                        United States Magistrate Judge